United States District Court
Eastern District of New York

-----------------------------------X

Emily Zapantis-Dalamakis, et al.,

         *Plaintiffs,*          **Memorandum & Order**

   - against -           No. 24-cv-4631 (KAM) (JRC)

City of New York, et al.,

         *Defendants.*

-----------------------------------X

**Kiyo A. Matsumoto, United States District Judge:**

On July 1, 2024 Plaintiff Emily Zapantis-Dalamakis commenced this action against Defendants City of New York and the Department of Education ("DOE"). Zapantis-Dalamakis alleged that the City of New York and the DOE unlawfully denied her request for a religious exemption to the COVID-19 vaccine mandate and terminated her for failing to comply with the mandate. On July 22, 2024, 30 former DOE employees joined in an amended complaint. In lieu of motions practice as to the First Amended Complaint, on April 11, 2025 Plaintiffs filed a Second Amended Complaint, ECF No. 18 (Sec. Amended Compl. ("SAC")), which is cited herein.

Plaintiffs allege eight causes of action: failure to accommodate, discrimination, and retaliation and harassment under Title VII of the Civil Rights Act of 1964 (respectively, Counts One, Two, and Three); failure to accommodate, discrimination, and

1

retaliation and harassment, and aiding and abetting discrimination in violation of New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") (respectively, Counts Four and Five); and violations of the Equal Protection Clause, Free Exercise Clause, and the Establishment Clause (respectively, Counts Six, Seven, and Eight).  (SAC ¶¶ 1423–1692.)

Presently before the Court is Defendants' motion to dismiss the SAC.  Having reviewed the parties' submissions, the record before the Court, and the relevant case law, for the reasons set forth below, the motion to dismiss is GRANTED.

<strong><u>BACKGROUND</u></strong>

**I.    Factual Background and Prior, Related Litigation**

On August 24, 2021, the New York City Commissioner of Health and Mental Hygiene issued an order requiring that that DOE and City employees be vaccinated against the COVID-19 virus.  *See Kane v. De Blasio* ("*Kane I*"), 19 F.4th 152, 159 (2d Cir. 2021).  In September 2021, numerous unions filed formal objections to the mandate on the grounds that it failed to provide medical or religious accommodations.  (SAC ¶¶ 67–71.)  Eventually, an arbitrator issued a decision requiring the DOE to provide employees with reasonable religious accommodation.  (SAC ¶¶ 72–73.)  "The Accommodation Standards allowed employees to request a religious accommodation by submitting a request that is documented in writing by a religious official (e.g., clergy)."  *Kane I*, 19 F.4th at 160

2

(internal quotation marks omitted).  "The Accommodation Standards further provide that requests 'shall be considered for recognized and established religious organizations (e.g., Christian Scientists).'"  *Id.* (internal quotation marks omitted).  "The language setting forth the criteria for which religious beliefs could (and could not) qualify was largely proposed by the City and the DOE."  (SAC ¶ 79.)

On September 15, 2021 the Vaccine Mandate was amended to provide: "Nothing in this Order shall be construed to prohibit any reasonable accommodations otherwise required by law."  (SAC ¶ 69.) Under the amended Accommodation Standards, the DOE denied "100% of applicants," with an auto-generated email citing undue hardship. (SAC ¶¶ 82-99.)

In *Kane I*, decided on November 28, 2021, the Second Circuit considered an appeal of the Southern District's denial of an earlier motion to preliminarily enjoin enforcement of the Vaccine Mandate.  *Kane I*, 19 F.4th at 159-63.  The Court held that "[t]he Vaccine Mandate, in all its iterations, [wa]s neutral and generally applicable."  *Id.* at 164.   The Court further found that the Vaccine Mandate's exemption policy did not treat secular conduct more favorably than comparable religious conduct.  *Id.* at 166. The Court determined, however, that the procedures implemented by the Arbitration Agreement as applied to the plaintiffs in that case "likely violated the First Amendment." *Id.* at 167.   The Court

3

remanded and directed the City to reconsider the plaintiffs' religious accommodation requests by a new central citywide panel, which would adhere to Title VII. *Id.* at 176–77.

In *New Yorkers for Religious Liberty v. City of New York* ("*NYFRL*"), decided on January 10, 2025, the Second Circuit considered facial and as-applied Constitutional challenges to the central citywide panel's review of religious accommodation requests. 125 F.4th 319 (2d Cir. 2025). As relevant, the Court determined that the revised process by the central citywide panel did not facially violate the Establishment Clause or the Free Exercise Clause. *Id.* at 330–32.

## II.  Procedural History

On July 1, 2024 Plaintiff Emily Zapantis-Dalamakis brought this action against the City and the DOE arguing that her former employer discriminated against her on the basis of religion in violation of Title VII. (ECF No. 1.)

On July 22, 2024 Zapantis-Dalamakis filed an amended complaint, naming 31 Plaintiffs, including Zapantis-Dalamakis, who were all employed by the DOE as teachers, administrators, or support staff and were suspended without pay on or about October 4, 2021. Each plaintiff challenged the denial of their religious accommodations to the City's Vaccine Mandate. (ECF No. 6.)

The City moved for leave to file a motion to dismiss the First Amended Complaint. (ECF No. 14.) At a Pre-Motion Conference,

4

this Court granted the Plaintiffs' request to file a Second Amended Complaint in lieu of motions practice as to the First Amended Complaint. (ECF entry at 3/19/2025.) This Court "strongly encouraged Plaintiffs not to include, in their second amended complaint, claims that the Second Circuit Court of Appeals has already determined are not viable. *See, e.g.*, *New Yorkers for Religious Liberty, Inc. v. New York*, 125 F.4th 319, 330 (2d Cir. 2024) (per curiam)". (ECF entry at 3/19/2025.)

On April 11, 2025, Plaintiffs filed their SAC, raising eight claims, against the Defendants. (SAC ¶¶ 1423-1692.)

On October 1, 2025, Defendants moved to dismiss the SAC, arguing, among other things that, the City is not a proper party and should be dismissed; the SAC is time-barred because the claims should have been brought in state court in an Article 78 proceeding; Plaintiffs' Title VII claims should be dismissed for failure to timely file a charge with the EEOC; and the Plaintiffs failed to state a claim for any statutory or Constitutional religious discrimination, failure to accommodate, or retaliation claims. (ECF No. 24-1 (Mot.) at 19-39.)

Plaintiffs filed a response, and the City replied. (ECF Nos. 25, 26.) Before the Motion to Dismiss the SAC was decided, Plaintiffs sought leave to file a Third Amended Complaint ("TAC"), which the Defendants opposed. (ECF Nos. 29, 31.) On July 2, 2026, this Court denied Plaintiffs leave to file. (ECF No. 34.)

**LEGAL STANDARD**

Defendants move to dismiss this action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

When considering a Rule 12(b)(6) motion to dismiss, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations in the complaint." *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009)). To survive a motion to dismiss, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, the Court need not accept conclusory assertions. *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021).

**DISCUSSION**

I.   **Whether the City is a Proper Defendant and Whether the SAC is Time-Barred**

First, the Defendants argue the City is not a proper party and should be dismissed because it is "well-settled that'[t]he City and the DOE are separate legal entities, and the City cannot be held liable' for any alleged wrongdoing by DOE." (ECF No. 24-1 at 19.) (quoting *Sotomayor v. City of New York*, 862 F. Supp. 2d

6

226, 248 (E.D.N.Y. 2012), aff'd, 713 F.3d 163 (2d Cir. 2013)). Plaintiffs argue that the City is subject to *Monell* liability stemming from its "policies, customs, and direct actions as a joint principal with the DOE." (ECF No. 25 at 9.) In reply, Defendants argue that Plaintiffs failed to raise a *Monell* claim in their SAC and cannot raise a claim of *Monell* liability for the first time in reply. (ECF No. 26 at 2.)

Courts in this Circuit "have made clear" that the City and the [DOE] "are separate legal entities" and therefore, the City cannot be liable for acts committed by the DOE or its employees. *See Romero v. City of New York*, 839 F. Supp. 2d 588, 601 (E.D.N.Y. 2012) (collecting cases dismissing claims against the City as an improper party). Plaintiffs do not make any allegations that the City directly took action against them or that any of the Plaintiffs were directly employed by the City. *See generally* SAC. And Plaintiffs improperly raised their theory of *Monell* liability for the first time in their opposition to Defendants' motion to dismiss. "A party is not entitled to amend its complaint through statements made in motion papers." *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (declining to consider a claim made by Plaintiff "for the first time in [their] opposition memoranda to the motion to dismiss"). Accordingly, the City is not a proper party and is dismissed.

Second, the Defendants argue that the SAC should be dismissed

in its entirety because "Plaintiffs' claims challenge administrative determinations by a government entity, i.e. the decisions by DOE to deny their requests for religious exemptions and end their employment for failing to comply with the vaccine mandate" and "[a] proceeding in New York state court under Article 78 is the proper avenue for challenging such decisions." (ECF No. 24 at 20.)  Plaintiffs assert that their claims, which include claims brought under federal law, extend beyond Article 78's scope. (ECF No. 25 at 33.)

Briefly, Plaintiffs' failure to bring Article 78 proceedings does not bar their claims in this Court.  The case cited by Defendants, *Kern v. Joyce*, determined that a plaintiff was barred from bringing a 42 U.S.C. § 1983 claim under the principle of res judicata, because she had previously brought an Article 78 proceeding based on the same facts as her attempted § 1983 claim. 857 F. App'x 691, 692 (2d Cir. 2021).  Although Defendants assert that two of the Plaintiffs here had joined a prior 2024 Article 78 proceeding, that would not bar the remaining 29 Plaintiffs' claims. Regardless, Plaintiffs' claims fail for the reasons set out below.

## II. Plaintiffs' Constitutional Claims

### a. Counts Seven and Eight: Free Exercise and the Establishment Clause

The First Amendment's "Free Exercise Clause [ ] protects an individual's private right to religious belief, as well as 'the

8

performance of (or abstention from) physical acts that constitute the free exercise of religion.'" *Kane I*, 19 F.4th at 163-64 (quoting *Cent. Rabbinical Cong. of U.S. & Can. v. N.Y.C. Dep't of Health & Mental Hygiene*, 763 F.3d 183, 193 (2d Cir. 2014)). Plaintiffs allege that the vaccine mandate and the accommodation process "were not neutral nor generally applicable[]." (SAC ¶¶ 1663, 1667.)  The Second Circuit's holding in *Kane I*, that the City's "Vaccine Mandate, in all its iterations, [wa]s neutral[,] generally applicable, and facially constitutional under the Free Exercise Clause," remains binding.  *NYFRL*, 125 F.4th at 330 (internal quotations omitted).  Thus, the Plaintiffs' facial First Amendment free exercise claim is dismissed.

To the extent that Plaintiffs claim that, even assuming that the accommodation process was facially constitutional, but nevertheless violated the Free Exercise Clause, this too is futile. The Second Circuit has previously affirmed the district court's dismissal of an as-applied Free Exercise challenge to the Vaccine Mandate and accommodations process, reasoning that the complaint identified the city panel's undue-hardship rationale, but offered only "threadbare conclusions" to contradict that finding. *NYFRL*, 125 F.4th at 332-35.

Here, the SAC does not allege "more-than-conclusory allegation[s] that the finding of undue hardship was erroneous or pretextual." *NYFRL*, 125 F.4th at 333; *see also  Hurley v. Dep't*

*of Educ. of N.Y.*, No. 24-cv-1664 (NRM) (LKE) 2025 WL 2711471, at *12(where the plaintiff "on numerous occasions refers to 'undue hardship' as the reason for the Citywide Panel's denial of her appeal," "her pleading suggests that Defendant denied her exemption request 'on the independent ground of undue hardship.'" (quoting *NYFRL*, 125 F.4th at 335)).  Based on the Second Circuit's decision in *NYFRL*, Plaintiffs' as-applied First Amendment free exercise claim is futile.

As to Plaintiffs' Establishment Clause challenge, "[t]he Establishment Clause prevents the enactment of laws that have the 'purpose' or 'effect' of 'advancing or inhibiting religion.' *NYFRL*, 125 F.4th at 330 (quoting *Agostini v. Felton,* 521 U.S. 203, 222–23 (1997)).  *NYFRL* forecloses claims that the Vaccine Mandate facially violates the Establishment Clause, and this claim is futile.  *Id.* at 331 (rejecting the argument that the Citywide Panel system violates the Establishment Clause, reasoning that the Mayor de Blasio's challenged statements "were made *before* the Panel process was even contemplated.  And crucially, Appellants do not plead any tangible connection between the statements and the Panel's processes.").

As to any as-applied Establishment Clause challenge, Plaintiffs allege the "Defendants each violated the Establishment Clause by expressing a preference for certain faiths and leaders over others and by expressing animus towards religious objection

10

to vaccination." (SAC ¶ 1685.) Plaintiffs continue that "[t]he DOE took this so far as to adopt a facially discriminatory policy, which favors Christian Scientists on its face, and requires discrimination against minority and unorthodox faiths." (SAC ¶ 1686.) These allegations, fail to satisfy Plaintiffs' pleading burden to state a viable claim. As outlined above, the Second Circuit has determined that neither the Vaccine Mandate nor the panel procedures privileged some religious beliefs over others or were infected with religious animus. *See NYFRL*, 125 F.4th at 330–32. The Plaintiffs' conclusory allegations are insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### b. Count Six: Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause therefore "requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Incorporated Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). Where the law at issue "neither burdens a fundamental right nor targets a suspect class," the Court will uphold a

"classification so long as it bears a rational relation to some legitimate end." *Winston v. City of Syracuse*, 887 F.3d 553, 560 (2d Cir. 2018) (quoting *Romer v. Evans*, 517 U.S. 620, 631 (1996)).

Here, Plaintiffs' facial equal protection claim amounts to an assertion that the Vaccine Mandate discriminated against employees with religious beliefs. Plaintiffs' facial First Amendment claims failed because the DOE's Vaccine Mandate "'in all its iterations, [wa]s neutral[,] generally applicable,' and facially constitutional under the Free Exercise Clause." *NYFRL*, 125 F.4th at 330 (quoting *Kane I*, 19 F.4th at 164). Therefore, "Plaintiffs' Equal Protection Clause challenge to the Mandate fares no better than their First Amendment challenge." *Kane I*, 19 F.4th at 167 n. 14.

And to the extent Plainffs bring an as-applied Equal Protection claim, the SAC does not identify similarly situated employees. (*See* SAC ¶¶ 1639–49.) "[C]ourts in this Circuit have rejected equal protection claims based on differential treatment in application of a vaccine mandate based on religion where, as here, the plaintiff failed to identify similarly situated individuals treated differently." *Mumin v. City of New York*, 760 F. Supp. 3d 28, 63 (S.D.N.Y. 2024); s*ee Lynch v. Dep't of Educ. of City of New York*, 822 F. Supp. 3d 258, 282–83 (E.D.N.Y. 2026) (collecting cases). Plaintiffs' failure to identify any comparator beyond the mere mention of other employees who were

12

allegedly accommodated dooms their as-applied Equal Protection claim. *See Hurley*, 2025 WL 2711471, at *9 (E.D.N.Y. Sept. 23, 2025) ("merely referencing Christian Scientists, or athletes and performers, in such a vague and general way does not satisfy the comparator prong of a selective enforcement claim" (citing *Mora v. New York State Unified Ct. Sys.*, No. 22-cv-10322 (VB), 2023 WL 6126486, at *14 (S.D.N.Y. Sept. 19, 2023)).  Plaintiffs' facial Equal Protection claim is therefore dismissed for failure to state a claim.

The Court "strongly encouraged Plaintiffs not to include, in their second amended complaint, claims that the Second Circuit Court of Appeals has already determined are not viable."  (ECF entry at 3/19/2025.)  Plaintiffs' allegations do not suggest that they are merely "inadequately or inartfully pleaded" but rather that their deficiencies are "substantive." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  The Court therefore grants the motion to dismiss these Constitutional claims.

### III. Plaintiffs' Title VII Claims

#### a. Exhaustion

Defendants argue that Plaintiffs' Title VII claims should be dismissed because Plaintiffs failed to timely file a charge with the EEOC.  (ECF No. 24-1 at 26.)  Although not a jurisdictional requirement, "[a]s a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available

administrative remedies and file a timely complaint with the EEOC." *Buon v. Spindler*, 65 F.4th 64, 77 (2d Cir. 2023) (internal quotation marks and citation omitted); *see* 42 U.S.C. § 2000e-5(e), (f) (procedures for filing with the EEOC). Under the so-called "single filing rule," however, "where one plaintiff has filed a timely EEOC complaint, other non-filing plaintiffs may join in the action if their individual claims 'aris[e] out of similarly discriminatory treatment in the same time frame.'" *Snell v. Suffolk County*, 782 F.2d 1094, 1100 (2d Cir. 1986) (alteration in original) (quoting *Ezell v. Mobile Hous. Bd.*, 709 F.2d 1376, 1381 (11th Cir. 1983)).

As the Second Circuit has stated, the doctrine is "essentially an allowance of loose pleading and is based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims he is suffering." *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (cleaned up). "[W]here the grievances are alleged to arise throughout a large group," however, the Second Circuit has imposed an additional requirement that there be "some indication that the grievance [asserted in the timely filed charge] affects a group of individuals defined broadly enough to include those who seek to piggyback on the claim," such that "sufficient notice [has been provided] to the employer to explore conciliation with the affected

14

group." *Tolliver v. Xerox Corp.*, 918 F.2d 1052, 1058 (2d Cir. 1990).

Here, Defendants concede that Zapantis-Dalamakis timely filed an EEOC complaint, but argue that the other Plaintiffs cannot "piggyback" onto her action because the filed charge gives no indication that the grievance affects a broad group of individuals. (ECF No. 24-1 at 26.)   Neither party has included a copy of Zapantis-Dalamakis's EEOC complaint with their filings.  And the SAC asserts that Zapantis-Dalamakis "filed an EEOC complaint, alleging that DOE and the City engaged in widespread discrimination and failure to accommodate in violation of Title VII."  (SAC ¶ 519.)   Given that a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87,98 (2d Cir. 2007), on these pleadings, the Court cannot conclude that a majority of the Plaintiffs should have their Title VII claims dismissed for failure to exhaust.  The Plaintiffs' Title VII claims, however, fail for the reasons set out below.

### b. Count Two: Religious Discrimination

Title VII prohibits an employer from discriminating against any individual with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin."  42 U.S.C. § 2000e-2(a)(1).  A plaintiff asserting a Title VII discrimination claim

must allege facts showing that "(1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision," which can be shown "by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega v. Hempstead Union Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015); *see also Littlejohn v. City of New York*, 795 F.3d 297, 316 (2d Cir. 2015) (noting the reduced prima facie requirements arising under *McDonnell Douglas* in the initial phase of a Title VII litigation).

As the Second Circuit held in *E.E.O.C. v. Port Authority of New York and New Jersey*, on a motion to dismiss in the context of a discrimination claim, the complaint "need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss," but it must assert at a minimum "nonconclusory factual matter" sufficient to "nudge" the claim "across the line from conceivable to plausible." 768 F.3d 247, 254 (2d Cir. 2014) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) and *Iqbal*, 566 U.S. at 680).

Plaintiffs allege that the adverse employment actions "occurred under circumstances giving rise to an inference of discrimination," namely that "Defendants' adoption, implementation, ratification and enforcement of a facially discriminatory religious accommodation policy, which conditioned

16

access to accommodation on membership in a preferred religious organization, and excluded access to those with unorthodox religious beliefs, shows discrimination as a matter of law." (SAC ¶¶ 1507, 1509.)

Plaintiffs cite no case for their assertion that the accommodation policy was discriminatory as a matter of law, and, as previously stated, the Second Circuit has determined that panel procedures were implemented in a non-discriminatory manner. *See NYFRL*, 125 F.4th, at 330–32. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "mere conclusory statements ... do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678. "Naked assertions of discrimination[,] without any specific allegation of a causal link between the defendants' conduct and the plaintiff's membership in a protected class, are too conclusory to withstand a motion to dismiss." *Williams v. Westchester Med. Ctr. Health Network*, No. 21-cv-03746 (KMK), 2024 WL 990153, at *9 (S.D.N.Y. Mar. 7, 2024) (citation omitted).

Moreover, the SAC does not identify potential comparators, let alone allege facts indicating that these comparators were similarly situated to Plaintiffs. For example, Plaintiffs allege that "[u]nder the Stricken Standards, those who met the discriminatory definition 'shall be accommodated' and no provision was made for an undue hardship defense. Pursuant to that policy,

17

at least 163 people were accommodated." (SAC ¶ 1528.) Such conclusory allegations, however, fail to give "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Buon*, 65 F.4th at 79 (citation omitted); *see, e.g.*, *Boyar v. Yellen*, No. 21-507, 2022 WL 120356, at *2 (2d Cir. Jan. 13, 2022) (summary order) (discrimination claim failed where plaintiff "alleged no facts showing that [certain] employees were suitable comparators").

Plaintiffs also argue that they would succeed under a "disparate impact" theory of religious discrimination. (SAC ¶¶ 1545-60.) Such claims "follow a three-part analysis involving shifting evidentiary burdens." *Gulino v. New York State Educ. Dep't*, 460 F.3d 361, 382 (2d Cir. 2006) (citing 42 U.S.C. § 2000e-2(k)(1)). Plaintiffs "bear[] the initial burden of [making] a prima facie showing of disparate impact." *Id.* This requires the plaintiffs to "(1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 151 (2d Cir. 2012). In such cases, "plaintiffs typically rely on statistical evidence to show a disparity in outcome between groups." *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 209 (2d Cir. 2020). Here, Plaintiffs offer no such evidence, and offer only conclusory statements to suggest that the challenged practice *actually* had a disparate impact. *See e.g.* SAC

18

at ¶ 1558 ("And there is of course a disparate impact claim among religions, as some religions and types of religious beliefs were preferred over others during the religious accommodation process.").

Accordingly, Plaintiffs cannot state a claim for Title VII religious discrimination.

### c. Count One: Failure to Accommodate

"Title VII . . . requires employers to accommodate the religious practice of their employees unless doing so would impose an 'undue hardship on the conduct of the employer's business.'" *Groff v. DeJoy*, 600 U.S. 447, 453–54 (2023) (quoting 42 U.S.C. § 2000e(j)). To establish a claim for failure to accommodate, a plaintiff has the initial burden to prove a *prima facie* case of discrimination. *See Doughty v. Dep't of Developmental Servs. STS*, 607 F. App'x 97, 98 (2d Cir. 2015); *see also De Souza v. New York,* 824 F. Supp. 3d 336, 354 (S.D.N.Y. 2026)("To establish a claim for failure to accommodate against an employer, a plaintiff must first make out a prima facie case of religious discrimination . . .").

As recounted above, here, the Plaintiffs have failed to prove a *prima facie* case of discrimination. Therefore, their claim that they were discriminated against when the Defendants refused to accommodate their religious beliefs must also fail.

### d. Count Three: Retaliation

In addition, Title VII's anti-retaliation provision makes it

19

unlawful "for an employer to discriminate against any . . . employee[] . . . because [that individual] opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII investigation or proceeding." 42 U.S.C. § 2000e-3(a). In order to "establish a presumption of retaliation at the initial stage of a Title VII litigation, a plaintiff must present evidence that shows '(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" *Littlejohn*, 795 F.3d at 315–16. Under Title VII, protected activity includes both "opposing discrimination proscribed by the statute and ... participating in Title VII proceedings." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173(2d Cir. 2005).

Plaintiffs allege that the DOE retaliated against them when they "sought to protect their religious rights," and that "Defendants denied accommodation, terminated them, attached damaging problem codes to their files, and then blocked their efforts to get unemployment insurance, asserting that they'd engaged in misconduct for being unable to violate their sincerely held religious beliefs and/or that they'd 'voluntarily' quit when in reality they were terminated against their will." (SAC ¶¶ 1565–66.)

From the SAC, it is unclear what Plaintiffs believe Defendants did to stop them from opposing alleged discrimination. Though they allege that Defendants were aware that they sought religious accommodation, and while complaints of discrimination may be informal, these complaints cannot be so vague or "generalized" that the employer could not "reasonably have understood [ ] that the plaintiff's complaint was directed at conduct prohibited by Title VII." *Rojas v. Roman Catholic Diocese of Rochester,* 660 F.3d 98, 108 (2d Cir.2011) (alteration and citation omitted). The seeking of a religious accommodation, through a process set up by the Defendants, is too generalized for the Defendants to have understood that Plaintiffs were complaining about protected activity (or complaining at all). "Although particular words such as 'discrimination' are certainly not required to put an employer on notice of a protected complaint, neither are they sufficient to do so if nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully discriminatory." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.,* 716 F.3d 10, 17 (2d Cir. 2013).

And, to the extent Plaintiffs believe that Defendants actions constituted "harassment," the courts have repeatedly emphasized that "Title VII is not a general 'bad acts' statute." *Wimmer v. Suffolk County Police Dep't,* 176 F.3d 125, 135 (2d Cir.1999) (quotation and other citation omitted).

21

Accordingly, Plaintiffs' Title VII retaliation claim is dismissed.

## IV.   Counts Four and Five: NYSHRL AND NYCHRL

Having disposed of Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining claims arising under New York law.  *See* 28 U.S.C. § 1367(c)(3).  A district court may decline to exercise supplemental jurisdiction over a claim under a number of circumstances, including where "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Where "federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003); *see also Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial the state claims should be dismissed as well.").  Accordingly, because the values of judicial economy, convenience, and comity would not be served by exercising supplemental jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims, and dismisses them without prejudice, pursuant to 28 U.S.C. § 1367(c)(3).

### CONCLUSION

22

For the foregoing reasons, the Defendants' motion to dismiss Plaintiffs' Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is **GRANTED.**  Plaintiffs' federal claims against the Defendants are **DISMISSED** with prejudice.  The Court declines to exercise supplemental jurisdiction over Plaintiffs' claims arising under New York state law, and those claims are **DISMISSED without prejudice** to be re-filed in state court.  The Clerk of Court is respectfully requested to enter judgment in favor of the Defendants and close this case.

**So ordered.**

Dated:     July 31, 2026
           Brooklyn, New York     _____
                                  **Kiyo A. Matsumoto**
                                  United States District Judge
                                  Eastern District of New York

23